TUCKBR, Judge.
The first question which arises in this case is, Whether the will of Cloister Hunnicutt, being made before the law authorizing the manumission of slaves, the clauses relative to emancipation are void, either as containing a bequest contrary to the act of 1748, ch. 31; or for uncertainty in respect of the persons intended by the description of the monthly meeting, whereof the testator was a member?
*In the case of Pleasants v. Pleasants, 2 Call, 351, it was said by judge Pendleton, that although the testators, at the time of making their respective wills, had not power to manumit, and if they had devised them upon condition that the dev-isees should emancipate them immediately, the condition being unlawful, would have been void, and the property vested; yet a condition that they should become free, when the law would permit it, was not of that sort.
From the state of the case in Pleasants v. Pleasants, it would appear, that the tes^ tator therein, devised an interest in his slaves to his several legatees, which might be absolute, in case no law should pass authorizing the manumission of slaves; but under a condition that the legatees should manumit them, whenever the laws would permit manumission. They took an estate in the slaves liable to be defeated by the contingency only: whereas, in the case before us, there is no interest vested in the ] monthly meeting by the bequest in Gloister *968 Hunnicutt’s will, but it is a aaked trust reposed in them, without any interest whatsoever. It is not a legacy to which a condition is annexed; which may or may not be void, as against the rules of law; but one which, if it can have any operation at all, must operate as a trust only. But, if the trust be to do a thing contrary to law, then the bequest will be altogether void; and the defendant, who is the heir at law, as was said in the argument, cannot' be affected by it. And the principle, laid down by judge Pendleton, will apply to the case. I shall therefore endeavour to examine these clauses, in order to discover whether they contain an injunction to do a thing contrary to law; or whether they are capable of receiving a construction consistent with it.
It is a rule in the interpretation of deeds and wills, which I believe will not be controverted, that if the words will bear two senses, one agreeable to, and another against law, that sense, which is most agreeable thereto, shall be preferred. To which I will add, that the testator being supposed to be inops consilii, the law will supply any words in his will which may be wanting fully to express his meaning "and intention; and that such intention be construed, if it be possible, not to be repugnant to the law, or the policy of the law. I must also premise, that I do not consider the two clauses as distinct and separate, but altogether as one and the same sentence; in the former part of which, the testator expresses a wish and desire, (as was the case in the will of John Pleasants, 2 Call, 319;) and then proceeds to make a bequest, the import of which I shall afterwards consider.
The words, “my will and desire is, that the following negroes should be manumitted, on or before the first month, next 1782;’ ’ and it was insisted by the counsel for the defendant, that this was an immediate act of emancipation, to take effect, at all events, at the time mentioned. If the words had been in the present tense, I manumit, or if the expression had been imperative, as, I direct that my slaves shall be manumitted, at the time mentioned, there could have been no doubt as to their operation, or construction. But the word should is not imperative; nor is there any imperative word in that part of the sentence : It is merely expressive of the desire of the testator that his slaves might be manumitted. So far, this case is parallel to that of John Pleasants’s will. It is not impossible that the prevailing sentiment of the country, and the general expectation that a law, authorizing the manumission of slaves, could pass, was known to the testator; and that he looked forward to an event which actually happened in thirteen months afterwards. Will the court, then, intend, that his slaves should be manumitted at all events the first of January following, or will they not rather supply the words, if the laws will then permit? Will they not rather make this interpretation since the word should,, in the strictest grammatical interpretation of it, does not imply a command, but imports, at most, a contingent operation. And, if so, will not the court thereby' understand a legal contingency, rather than defeat the testator’s intention by a different construction?
If this interpretation of the first member of the clause be sound, a construction, conformable thereto, ought to be *made of the second member, viz: “I give the above named negroes to the monthly meeting of which I am a member, to be manumitted by such members of the said meeting, as the meeting shall direct.” Here the time and manner of manumission are left perfectly at large. The testator seems to have been aware that something was to be done by the meeting, in order to carry his benevolent intentions into effect. He leaves the appointment of fit agents by whom it might be done to that meeting. Will the court intend that he meant they should, without regard to law, proceed to execute a deed of manumission? Certainly not. They might either petition the legislature to pass a law enabling them to execute this trust; or wait, as they have done, until the time when a general law would permit the thing to be done without. In either case, there could be nothing illegal in the bequest. And where, by any possibility, a legal interpretation can be given to any provision contained in a will, surely we ought not to reject it.
The second question arising out of this will is, Whether the devise to the monthly meeting be void from uncertainty as to the persons meant to take? It was conceded by the plaintiffs’ counsel, who spoke last, that, if the monthly meeting, or rather the members of the meeting, were intended to receive any benefit, to themselves, under that bequest, it would have been absolutely void for uncertainty, since the monthly meeting was not a corporation ; nor could such a general description avail the members thereof individually. But where the benefit is intended for another, the society, although merely a private one, are capable of taking as trustees, for the benefit of that person, in whose favour the testator intended it: And that the court will aid any imperfect description in the will, in order to effectuate the intention of the testator. And this the cases, cited by himself and the gentleman who argued on the same side with him, I think abundantly prove. The general rule laid down in 4 Bac. Ab. 334, is that a devise is never construed absolutely void for uncertainty, but from necessity: For, if there be a possibility *of reducing it to a certainty, the devise is good. And, in 1 Bac. Ab. 584, we are told that where there hath been an uncertainty in the description of the persons to take (as toa corporation by a wrong name), the courts have been very liberal in their expositions. And the cases there cited, Ambl. 422; 1 Wins. 425, 674; Finch. 194, 395; Ambl. 524, are all strong cases to prove the rule. And, in 2 Atk. 239, lord Hardwicke decreed a devise, to the ward of Breadstreet, to be good. And, upon a bill brought by the aldermen and principal inhabitants of that ward to have the direction of the court for the application of this legacy, said, that, although the aldermen and inhabitants of a ward are not in point of law a corporation, he would decree the *969 money to be disposed of, by them, in such charities as they should think most beneficial for the ward. And, in 1 Black. Rep. 91, lord keeper Henley say's, Where the uses are charitable, and the person has, in himself, full power to convey, the court will aid a defective conveyance to such uses. Upon the authority of all these cases, which I have not particularly noticed, as unnecessary, I think the legacy to the monthly meeting, for the purpose of emancipating the slaves who were the objects of the testator’s bounty, is not a void bequest, but good for that purpose.
The next question to be considered is, Whether this trust has been so far executed as to enable the plaintiffs to maintain an action at law for their freedom?
The deed of emancipation executed by Wyke Hunnicutt the executor, although executed by him in pursuance of the direction of the monthly meeting of which his testator and himself were members; and although executed in conjunction with Edward Stabler, the other agent appointed by the monthly meeting, is evidence of the executor’s assent to the legacy to the monthly meeting; and the assent of one executor to a legacy shall bind the whole. 3 Bac. Ab. 30, and the cases there cited. And although Wyke Hunnicutt executed his deed as a member of the meeting, and not as an executor, yet it shall bind him as executor, '"'according to the reasoning of judge Pendleton in Shaw v. Clements, 1 Call, 438, where he says, that although the heir, in that case, made a conveyance of the lands as executor and not as heir, yet his conveyance should operate as an estoppel against him, if he should claim as heir. And since the deed of Wyke Hunnicutt, in this case, would operate as an estoppel to himself as executor, so also doth it operate in like manner against all the other executors, I conceive. Nor can this affect the other executors upon a charge of a devastavit as was supposed by the defendant’s counsel; for one executor is not chargeable with the wrong, or devastavit, of his companion. Godolph. 134; 1 Cro. 318; 3 Bac. Ab. 31.
It was objected by the counsel for the defendant, that it did not appear, by any regular evidence, that the monthly meeting even delegated such a power as was given them by the will to Wyke Hunnicutt and Stabler. But it was well observed, in answer, that the demurrer to evidence admitted any and every conclusion of matter of fact, which the jury might have inferred from the evidence. Now, although neither the recital in the deed, nor the testimony of the witness, was conclusive evidence of that fact, yet they might have been considered by the jury' as sufficient to establish the fact in their opinion; and the court may, upon the demurrer, do the same. And, as Wyke Hunnicutt and Stabler are proved to have been members of the meeting, and have recited the proceedings of that meeting in their deed of emancipation, I will infer that the meeting did authorize them, in the usual manner in which their business was transacted, to execute the deed; and the evidence of the witness is a further inducement to this inference. And, although Wyke Hunnicutt and Stabler were appointed agents in behalf of the meeting before the law, which permits emancipation, actually passed, yet as the deed was not executed until after the passage of the law, I hold the execution to be valid, under the will, and under the law, whatever objection there might be to the manner and time in which the monthly meeting *executed the trust reposed in them ; for, as a court of equity would have aided any defect in that execution, I will not agree to turn the plaintiffs round, to give that effect to the deed, which a court of equity would have given it by a decree.
Upon the whole, I am of opinion, that the bequest, in the will of Gloister Hunni-cutt, is neither void, as against law, nor for uncertainty in the description of the persons whom the testator intended to appoint as trustees to carry his benevolent instructions into effect. I am also of opinion, that the trust reposed by him in the monthly meeting, and by them, in pursuance of his desire, delegated to two members of their own body, has been executed in such a manner, as to enable the plaintiffs to maintain an action at law for the recovery of their freedom, to which they are entitled; and consequently', that the judgment of the district court ought to be reversed, and judgment entered for the appellants upon the demurrer to the evidence.
ROANE, Judge.
This case, of a suit for human freedom, is one peculiar to this country: or at least, one whereof we find no parallel in the laws of England.
It is marked by this strong trait, that a delay of trial is equal to the denial of the right. In the strongest cases to be found in the English books, even in the much favoured instances of charities, a delay of justice may be compensated in damages: but, in this case, the unhappy plaintiff has run out his race of existence, and the tedious forms of the courts bring liberty to him too late!
This consideration has justly had great weight with our courts. It has induced them to grant a prompt and speedy trial out of the ordinary course of the docket; and I doubt not would lead to a preference of that jurisdiction in which causes are soonest matured for the decision of the court: It would probably lead to a preference of the common law action, on this ground, rather than a suit in equity. But while, for this reason, it yields this preference, the courts of *law surely would not repudiate such principles of decision as generally apply to courts of equity: It would be a mockery to do this, as it would be granting a boon to the plaintiff which he could not accept; which would drive him, of necessity, into a court of equity, notwithstanding the empty privilege yielded him of suing at law, and would render that indulgence of the court a complete felo de se. The courts of law will rather stand in the place of courts of equity in relation to the principles of their decision.
If the courts of common law in England in modern times, and especially' in the time of lord Mansfield, have departed from their ancient strictness, and approached near to the liberality which marks the decisions in *970 equity, in mere questions of property, whatever diversity of opinion may have existed on this subject, it is believed that even the more rigid Kenyon, or his inflexible predecessor, lord Holt, would have approved that system in relation to the case before us; a case involving human liberty ; a case where admittance is yielded in the common law courts on such cogent reasons; and where a repulsion, by the law courts into the courts of equity, would effectually destroy the right, by the delays and procrastination incident to their proceedings.
On this liberal ground, then, I shall bottom myself in the present case.
In the construction of wills, I profess to be governed by the intention of the testator, where there are sufficient data from which to infer that intention with adequate certainty.
In the case before us, I believe if it were necessary it might be assumed as proved that the testator, Gloister Hunnicutt, was one of the people called quakers. The clerk of Sussex states that his executors (his wife and Brother) were quakers, and made affirmation when they qualified. In aid of this, the style used by the testator in his will, in relation to the names of the days of the week, and of the month, (a style exclusively used by persons of that persuasion,) is perhaps conclusive evidence: But the ulterior evidence respecting the monthly meeting (of which the *testator was a member) and the record of it as proceedings, to áay nothing of the positive allegation of that fact in the deed of manumission, fill up the measure of this testimony. I should rather think therefore that even on a special verdict a court would be justified in assuming this as a fact proved in the cause; and much more on a demurrer to evidence. Could any juror possibly have doubted, upon this testimony, that the testator was a quaker? I presume not.
Being proved to be a quaker, I believe that this court might, to make the case stronger, take official notice of the principles of that society, holding slavery in abhorrence. In Savile v. Savile, 1 Wms. 746, it was held that a court of equity might take notice of the general delusion the nation was under in respect of the South Sea bubble, at the time of the contract: but' this fact was certainly not more notorious that the principles of the quakers on this subject have always been to all well informed persons.
But I can even throw this strong consideration out of the present case. The will ■speaks sufficiently for itself.
The testator evidently intended that his slaves should be emancipated. This is not even denied under the strict terms of the will, provided it were done prior to the first of January, 1782. That intention is not only inferrable from the will and desire expressed in the first clause of the will, but from the bequest of them to the monthly meeting to be manumitted by such member thereof as the said monthly meeting shall direct. The testator certainly did not mean to give the property in these slaves to a society whose principles would not admit of their accepting them; to whom, on account of their numbers, the bequest would have been trifling, and who were incapable in law of receiving them for their own use, although they might receive them in trust for a charity' — -for that emphatical species of charity which is infinitely stronger than any of those enumerated in the statute of Elizabeth.
Can any person believe that if these slaves were still to be held as property, the testator would have made the vain ^attempt, in favour of that society, to the disherison of his own children, and his relict; who, as appears by his will, were the sole objects of his bounty in relation to the residue of his estate? I think not.
This subject of intention is too plain to be pursued.
But it is objected, 1. That the condition of the bequest was that the manumission should be within a given time; which time had run out before the manumission was in fact made; and 2. That the condition was contrary to law; to that law which then prohibited emancipation.
I will first consider the first objection.
The intention expressed in the first part of the clause, (for the whole seems to be one sentence,) is indeed that they should be manumitted on or before a given day. Had the clause stopt here, I should even then have embraced my present opinion; but the ulterior part of the sentence shews a desire that they should be emancipated.
Had this last part been omitted; and were the construction now to be made upon the first part only, I would govern that construction by the general principle that courts of equity will relieve against the lapse of time, unless the performance within the time were an essential part of the contract; and was a circumstance without which the contract could not be called into operation. In the present case, although the manumission is desired to be made within a given time, it is not further stated, nor inferra-ble, (but quite the contrary,) that the manumission should not be made thereafter. I will put one or two analogous cases from the English books. ■
In Richmond v. Taybur, 1 Wms. 735, the husband was to purchase land within a year, or the money to go over, &c.; further time was given him, it appearing that it was not his fault that a purchase was not made. In the case before us the manumission was probably not made within the time, because, within the time, the act had not passed authorizing it; and it is very probable, as argued by the appellant’s counsel, that the testator had counted upon the intermediate enaction of such a statute, and on that circumstance had probably predicated his direction as to the time.
*In Gibson v. Patterson, 1 Atk. 12, a specific performance of articles for sale of land, was decreed in favour of the vendor, without any regard to his negligence in not producing his deeds and tendering a conveyance “within the time limited for that purpose by the articles;” and by lord Hardwicke, “most of the cases here are liable to the same objection, but there is nothing in it.”
*971 These principles apply to overrulé the objection in the instance before us. The whole will taken together does most certainly, (if not the particular member in itself, which I have been considering,) shew the intention of the testator to have been that the slaves should be emancipated : the time when, is a secondary and collateral circumstance, and a noncompliance with which shall not frustrate the intention of the testator, in relation to his principal and greater object.
As to the second objection, that this condition is void, as being contrary to law, I will observe, 1. That it appears to be the intention of the testator, on the will itself, that these negroes should be manumitted; and that they should enjoy their freedom; he was certainly far from meaning to throw them into a more grievous state of bondage.' This would have resulted from a manumission in opposition to the law of 1748, as by that act the officers of government were obliged to sell the emancipated slaves. The testator certainly intended an effectual and beneficial act of emancipation ; not one which would be not only entirely vain and fruitless, as well as illegal, but would, for no manner of benefit to himself, his society, or his family, place the objects of his benevolence, in all probability, in an infinitely more unfortunate situation. There can be no doubt, then, of the intention of the testator on this point.
2dly. How do the rules of law stand in relation to this objection?
I hold it to be a clear principle, that wherever there may be a way found out to perform the condition without a breach of the law, the condition shall be esteemed good and not void, 1 Wms. 190; Mitchell v. Reynolds, 1 Fonbl. 220; *and the case put in this last book is substantially like the present: it is of a condition to alien in mortmain, and held good, because there may be a license obtained.
Again, it is said in the text of the same book, 1 Fonbl. 439,’ (text which I shall always quote with pleasure, because it abounds with the clearest and most undeniable principles and maxims of equity,) “that a man’s act shall not be void, if it may be good to any intent.”
Supported by these principles and authorities, shall we not say, that the testator meant not that his trustees should contravene the act of 1748, but that they should effect a legal manumission, either by a particular application to the legislature, or by their own act, after such act should be rendered lawful by the intervention of a general legislative act on the subject. There is nothing in this will which ties down the trustees, to be appointed by the monthly meeting, to any particular form of manumission ; the object being the freedom of the slaves, they are left at large as to the most effectual form and manner.
This view of the subject steers clear of any interference with the principle laid down in the case of Pleasants y. Pleasants; namely, ! ‘that if the devise had been upon condition to emancipate immediately, the condition would have been unlawful and void.” In that supposed case, the act being limited to be done immediately, precluded the idea of an application to the legislature: It shut out every possible mode in which the act could have been lawfully effected.
These objections, therefore, I conceive, do not obstruct the title of the plaintiffs.
The cases cited by the appellants’ counsel are satisfactory to shew, that, under the liberal principles adopted in relation to charities, the devisees in this instance were competent to take in the character of trustees. In that character they were at liberty, and even compellable, to apply for a particular legislative act of emancipation, until the enaction of the general law of 1782; but after that event, such application was unnecessary, and the deed of emancipation *which they actually executed was legalized: That deed has reference to the act “to authorize the manumission of slaves,” and confers on the plaintiffs all the benefits of freedom granted by that act.
For these reasons, I think the' judgment of the district court erroneous; that it ought to be reversed; and judgment rendered in favour of the plaintiffs.
FLEMING, Judge.
The - objection, founded on the act of 1748, is entirely overthrown by the case of Pleasants v. Pleasants, 2 Call, 319, which decided, that, if the operation of the devise was postponed to the period when a law permitting manumission should pass, it would be good: For the present case is of that kind, as no time was fixed for the exercise of the power; and the period, being left indefinite, was necessarily confided to the discretion of those to be appointed to make the manumission; which implied that it was not to be done until a statute should be made to authorize it, because an earlier attempt would have been abortive. This idea was conformable to the state of things at that time; for the quakers had long been petitioning the legislature to pass such a law; and there was every appearance, that their request would be complied with, at no very distant period. The event was therefore looked to with confidence by the testator; and that circumstance indicates his intention that the act of emancipation 'should not be attempted, until the contingency happened, and the transaction should be lawful. The objection of uncertainty in the devise has no weight; for not only are bequests to charitable uses expounded favourably, but it is a rule, that a devise is never construed to be void for uncertainty, unless from necessity; for if there be a possibility of reducing it to certainty, it will be supported. Pow. Dev. 422. That doctrine is expressly applicable to the case before the court; for nothing is easier than to identify the characters who were intended to take during the interval between the death of the testator, and the passage of the contemplated law; and ^consequently, nothing more practicable than to give effect to the devise. For the quakers are a well known society; the districts to which particular members of it belong; and their meetings for the purposes of worship and civil government among themselves, are familiar to every body. Monthly meeting, therefore, is a term perfectly understood by *972 all classes'of men; and', upon the present occasion, it embraced none but the members of the particular church, to which the testator belonged: So that the individuals of it were capable of being ascertained with absolute precision. Therefore the objection, on the ground of uncertainty, fails; and that, of the want of capacity to take, falls with it. Tor it was a devise to the individual members of the society by the collective name of monthly meeting; and that such a bequest is valid, is abundantly proved by the cases cited for the appellants. In several of which, the bequests were far less certain than this; and yet they were supported, for the sake of the charitable objects designed by those who made them. If follows that the members of the monthly meeting were capable of taking to the uses expressed in the will; and when, upon the passage of the law, the persons appointed made the deed, the manumission was perfected, and the appellants discharged, in law, from bondage. This enabled them to sustain their action at common law against the defendant, without the intervention of a court of equity to compel an execution of the trust: And therefore, I am of opinion, that the judgment of the district court ought to be reversed; and judgment entered for the appellants upon the demurrer to evidence; which has admitted the incidental circumstances necessary to give validity to the act of the monthly meeting.
CARRINGTON, Judge.
The history of the times shews that the testator, who belonged to a fraternity which had been, for sometime, soliciting the legislature for a law to authorize emancipation, was fully apprized of his inability to have the contemplated act completed before such a statute ^should pass; and therefore, that he necessarily referred to the period, when it could be legally done: which obviates the distinction taken, by the appellee’s counsel, between a present, and a future, devise. There is nothing in the objection with regard to uncertainty in the bequest: for the quakers are a well known society; and the witness proves what set of men are meant by the term monthly meeting: The description, there-iore, was easily verified: and, as the persons appointed by them executed the deed in conformity to the will of the testator, after the act of assembly authorizing the manumission of slaves had passed, there is nothing exceptionable in the devise, or the manner of executing it. For, in principle, it is like the bequests made by More-man and Mayo, referred to in the case of Pleasants v. Pleasants, 2 Call, 319: And, upon the authority of that decision, which embraces all the points urged upon the present occasion, I am of opinion, that the judgment of the district court ought to be reversed, and judgment entered for the appellants upon the demurrer to evidence.
LYONS, President.
Devises in favour of charities, and particularly those in fa-vour of liberty, ought to be liberally expounded : And, upon the present occasion, it is fair to infer, that the testator meant that the deed of manumission should not take place, until an act of assembly, to authorize it, should pass; for he knew, that the existing law forbid it, and that his society had been anxiously endeavouring to procure an enabling statute, for that purpose, from the legislature; which it was generally believed would shortly be obtained. This brings the case precisely within that of Pleasants v. Pleasants, 2 Call, 319; and puts an end to the objection founded upon the distinction between a present devise, and one with a future aspect. The exception with respect to the supposed uncertainty in the bequest, has no weight; for, to say nothing of the name by reputation of the monthly meeting, the description is, at most, imperfect only; and a court of equity .would, if no appointment had been made, have supplied trustees, and compelled performance *of the trust. Upon these points, the cases cited by the appellants’ counsel are perfectly satisfactory. Then, as the meeting appointed persons to fulfil the directions of the will; and they, in conformity thereto, executed the deed subsequent to the passage of the law, the emancipation was complete upon that event; and the appellants were enabled to sue at common law. I concur, therefore, that the judgment of the district court ought to be reversed, and judgment entered for the appellants upon the demurrer to evidence.